WILLIAMS et al. v. UNITED WIRELESS TELEGRAPH CO. et al.

(Supreme Court, Special Term, New York County.   June, 1911.)

**1. CORPORATIONS (§ 553*)—RECEIVERS—GROUNDS OF APPOINTMENT.**

It was shown that the directors of a corporation, as well as other influential officers, had grossly mismanaged the corporate affairs and are continuing to do so, and that some of the directors conspired to rob the corporation and stockholders, and that some had been convicted of crime, and that the officer in charge was unfit, and that there was no officer able and sufficiently honest to conduct the affairs of the corporation and protect its assets, and it also appeared that applications for a receiver had been made in the federal court and courts of two other states.   *Held*, that a receiver should be appointed for the corporate assets in the state.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2201–2216; Dec. Dig. § 553.*]

**2. CORPORATIONS (§ 558*)—RECEIVERS—QUALIFICATION.**

One who was an officer of the corporation when the fraud and mismanagement for which a receiver was asked were committed should not be appointed as a receiver, though he denies participating in the fraud; the best interest of the corporation being conserved by appointing a receiver who has had no connection with the corporate affairs.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2237–2240; Dec. Dig. § 558.*]

**3. CORPORATIONS (§ 557*)—RECEIVERS—COMMENCEMENT OF PROCEEDINGS—EFFECT UPON PROPERTY.**

Upon the commencement of a suit to place the property of a corporation located in the state in the custody of the court by the appointment of a receiver, the property is deemed to be in the possession of the court in the state, though receivership proceedings have previously been taken in another state where a small part of the property is.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 557.*]

Application by Samuel P. Williams and others against the United Wireless Telegraph Company and others for the appointment of a receiver.   Application granted.

James A. Allen and Roger Foster, for plaintiffs.
Geo. Gorden Battle and John Kelly Prentice, for defendants.

COHALAN, J.   This is an application for the appointment of a receiver of all the property and assets of the defendant United Wireless Telegraph Company in the state of New York; and also of all the property and assets of the defendant United Wireless Telegraph Company of New York.   Plaintiffs have begun an action in equity on behalf of themselves and all other holders of stock of the United Wireless Telegraph Company.   They allege, in substance, that the United Telegraph Company, a corporation, was organized under the laws of Maine, for the purpose of unifying wireless interests, and out of various systems making one vast system to operate wireless telegraphy in the United States and elsewhere; that it had, by its articles of incorporation, an authorized common stock of $10,000,000, all of which has been issued, and which has been divided into $1,000,-000 worth of shares of the par value of $10 each, and also an author-

ized preferred stock of $10,000,000 divided into shares of the par value of $10 each; that more than $3,000,000 of these shares have been subscribed for and are now outstanding; that this corporation has had its principal office in the county of New York, and it has, not only in this county but in other parts of the state, valuable personal property, consisting of leases, stations, and apparatus for wireless telegraphy, patents and patent rights, together with other kinds of personal property, principally contract rights; that the other defendant corporation is a domestic corporation, organized for like purposes; that its capital stock is $5,000, divided into 500 shares of the par value of $10 each; that all the stock of the domestic corporation is owned and controlled by the foreign corporation; that, in other words, the domestic corporation is a mere dummy for the foreign corporation, and every interest it holds in any property right is held in trust for the foreign corporation; that the holders of common and preferred stock in these corporations exceed 1,000 in number, many of whom are not residents of the state of New York; that the other defendants, eleven in number, constitute the entire membership of the board of directors of the foreign corporation, together with three other defendants, who occupied positions of trust in the affairs of the foreign corporation; that the defendants, other than the defendant corporations, have failed and neglected to perform their duties, have grossly mismanaged the affairs of the corporations, to their great and irreparable hurt, damage, and detriment, and are continuing to mismanage their affairs to the injury and loss of both corporations and the plaintiffs; that conspiracies were entered into among some of said directors to defraud and rob the corporations and the stockholders.

After manifold recitals of fraud, conspiracy, and mismanagement, the complaint alleges that defendant Bogart pleaded guilty to an indictment in the District Court of the United States for misusing the mails, and that defendants Wilson, Butler, Diboll, Parker, and Tompkins were, on the 29th day of May, 1911, convicted in the same court of an infamous crime; that five of these defendants are now in the city prison, under a stay which prevents the execution of said judgment conviction against them; that it is impossible for them to attend to the affairs of these corporations; that they have forfeited their offices therein; that defendant Frederick I. J. Hanson is now in charge of those corporations, and is unfit to have charge of the same; that there is no officer, agent, or director of the foreign corporation defendant able and willing and sufficiently honest to take charge of its affairs and to defend its assets.

The relief sought in this complaint, replete as it is with charges of fraud, criminal conspiracy, and mismanagement and other forms of criminality, is that a receiver should be appointed by this court to take charge of the property of the corporate defendants in this state and to preserve and liquidate the same, together with the other and necessary relief incident to the receivership. The defendant corporations have interposed an answer to the complaint, and admit practically all of the said allegations of mismanagement and malfeasance in

office, in which the officers and directors of the defendant corporations were involved, with the exception of the charges against the directors Hanson and Eshelman. It is set up that Frederick I. J. Hanson, the acting president of the foreign corporation, is preventing waste and misappropriation, and is conducting the business of the corporation in a satisfactory manner, except so far as he is restrained by an injunction order issued in the state of Maine, or superseded by receivers appointed by the courts of that state; that an action was heretofore commenced by the said Hanson in the Supreme Court of Maine against the defendant foreign corporation and Christopher C. Wilson, to declare invalid certain stock of the Maine corporation fraudulently issued by Wilson and his associates; that another action was instituted in the Supreme Court of Maine by George Ross Eshelman, and an injunction was granted restraining the officers and directors of the corporation from further acting as such officers and directors; that in the Eshelman action, on June 12, 1911, the Supreme Court of Maine appointed John Howard Hill of Portland, Me., Frederick I. J. Hanson of Philadelphia, and Seth M. Milliken of New York, as receivers. On Friday, June 9, 1911, and before these appointments were made, an application was made ex parte in the courts of this state for a receiver; but the court to which said application was made directed that said application be made on notice to the defendants. An order to show cause why a receiver should not be appointed was granted on the plaintiffs' application on June 10th, and was served upon the defendant corporations and the defendant Hanson, and several other defendants, on the same day and before the appointment of the receivers in Maine. Now the defendant corporations come into this court as well as the plaintiffs and other parties interested, and are practically agreed that a receiver or receivers should be appointed. In fact, there has been a stampede for receivers. Since this proceeding was instituted in this court, receivers have been appointed in Maine and New Jersey, and certain of the counsel who have appeared on this motion have asked for like relief in the Circuit Court of the United States. This untimely procedure was not countenanced by that court. Holt, J., writing, said:

"The suit in the New York Supreme Court having been brought, and the application for receivers having been made, which was under advisement before the suit was begun, so that that court first obtained jurisdiction, and the subject-matter of the suit not being one in which the court has special jurisdiction, I think comity requires that this court should not appoint receivers pending the determination of the state court. The application in this court is therefore denied."

This application, therefore, being properly before this court, it is proper to consider what the parties want.

[1] It would seem that the necessity for a receiver of the assets of the defendant corporations in this jurisdiction is imperative. There is undoubted authority for the appointment of a receiver in this case. Reusens v. Manufacturing & Selling Company of America, 99 App. Div. 214, 90 N. Y. Supp. 1010; Popper v. Supreme Council of the 'Order of Chosen Friends, 61 App. Div. 405, 70 N. Y. Supp. 637. It is practically conceded by all parties appearing in this action that a

receiver or receivers should be appointed. If this is not done, chaos will result, and a further unseemly scramble and race for precedence followed by a certain dissipation of assets will ensue. The defendant corporations, however, ask that the receivers in Maine be appointed as ancillary receivers in this state. These receivers were appointed at the suggestion of the defendants Hanson and Eshelman, both of whom filed bills in equity in Maine. Hanson is now in charge of the property, claiming to be acting president of the corporations.

[2] The fact that defendant Hanson was an officer of the company at the time of the frauds and mismanagement complained of (altogether aside from his claim of not participating in the same) would seem to be a sufficient reason for refusing to consider him as one of the receivers to be appointed. In Finance Co. of Pennsylvania v. Charleston, C. & C. R. Co. (C. C.) 45 Fed. 436, 437, it was held:

"It has always been thought that while the insolvency of the company might have been caused by misfortune, and by no default of its direction, nevertheless those who were about to lose their property, or had it placed in jeopardy, were entitled, in all reason and fairness, to a new management, though perhaps not a better one. In the one case, there is some hope; in the other, there can be expected but the former result.".

In Attorney General v. Bank of Columbia, 1 Paige, 511, affirmed by the Court of Impeachment and Correction of Errors, in Bank of Columbia v. Attorney General, 3 Wend. 588, it was held:

"A direction by the chancellor to a master not to take a nomination of any person as receiver who was an officer or agent of the bank proceeded against at the time it stopped payment, or at any time within six months previous thereto, is discreet and proper."

But it seems clear that the interests of the creditors and stockholders, as well as of the defendant corporations, will be best conserved by a removal, so far as is possible, of the friction and differences which have resulted from or grown out of the recent management of the property, and to that end the choice of receivers should be made from those who have not been connected in any manner with any of the factions or groups that have been quarreling about the affairs of the company. With that end in view, the court will select as receivers men in no way connected with the company, so that they may without friction obtain the assistance of any of those heretofore connected therewith, by whose aid the interests of the corporation may be conserved, and further that they may if necessary press with vigor any claim or claims that may exist in favor of said corporations against any of the officers or directors.

[3] In Maine there is little or no property, while the bulk of the property is in this state. This property is now deemed to be in the custody of this court, as a suit in equity to place it there has been commenced. Re Chetwood, 165 U. S. 443, 17 Sup. Ct. 385, 41 L. Ed. 782; Farmers' Loan & Trust Co. v. Lake St. El. R. R. Co., 177 U. S. 51, 20 Sup. Ct. 564, 44 L. Ed. 667.

There is no controversy over the fact that there is immediate need of the appointment of receivers.

Motion granted upon receivers filing bond, to be approved by the court, in the sum of $100,000.